IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Ronald N.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:23-cv-16647 |
| v. ) | |
| ) | Honorable Beth W. Jantz |
| MARTIN J. O'MALLEY, ) | |
| Acting Commissioner of Social Security,[2] ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. §405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Ronald N.'s application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's Memorandum in Support of Reversing or Remanding Commissioner's Decision (dkt. 14) is DENIED and the Commissioner's Motion for Summary Judgment (dkt. 19) is GRANTED. The Commissioner's decision is affirmed.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by his first name and the first initial of his last name.
[2] Pursuant to Federal Rule of Civil Procedure 25(d), Martin J. O'Malley has been substituted for his predecessor.

I.   Background

   A. Procedural History

On September 15, 2020, Plaintiff filed applications for DIB and SSI, alleging disability beginning April 10, 2020. R. 15. Plaintiff's claims were denied initially on May 6, 2021, and upon reconsideration on May 6, 2022. *Id.* A hearing was held before an Administrative Law Judge ("ALJ") on April 20, 2023. R. 32-85. The ALJ denied Plaintiff's claims on June 1, 2023. R. 12-31. The Appeals Council denied Plaintiff's request for review on October 10, 2023, r. 1-6, making the ALJ's decision the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. §405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

   B. The ALJ's Opinion

The ALJ's opinion followed the five-step analytical process required by 20 C.F.R. §404.1520. R. 17-25. The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of April 10, 2020. R. 17. At step two, the ALJ found that Plaintiff had the following severe impairment: degenerative disc disease of the lumbar spine, with remote history of L5-S1 laminectomy and discectomy. R. 17-18. The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments. R. 18. Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work except: "occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no climbing ladders, ropes or scaffolds; no working around unprotected heights or unprotected dangerous moving machinery; no commercial driving; no concentrated exposure to extremes of cold, heat, or humidity." R. 18-23. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 23. At step five, the ALJ found that there were jobs

2

that existed in significant numbers in the national economy that Plaintiff could perform. R. 24-25. The ALJ then concluded that Plaintiff was not disabled under the Social Security Act. R. 25.

## II. Standard of Review

The Court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102, 139 S. Ct. 1148, 1154, 203 L.Ed.2d 504 (2019)). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). While reviewing the Commissioner's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell*, 97 F.4th at 1052-53 (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). On the other hand, the Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

## III. Discussion

Plaintiff contends that the ALJ made three reversible errors when she: (1) impermissibly "played doctor" to undermine the effects of Plaintiff's chronic severe pain as well as objective abnormalities, (2) failed to support her rejection of the opinion of Dr. Glaser, Plaintiff's treating pain specialist, with substantial evidence, and (3) failed to account for the effects of chronic pain

3

on Plaintiff's ability to sustain the non-exertional requirements of full-time work. Dkt. 14 at 6-14. But because the ALJ's decision was supported by substantial evidence, the Court affirms the Commissioner's decision. *See Warnell*, 97 F.4th at 1052 ("We affirm an ALJ's decision denying disability benefits so long as it is supported by substantial evidence.").

### A. The ALJ did not impermissibly play doctor.

Plaintiff first takes issue with the ALJ's credibility determination and argues that she impermissibly played doctor to undermine the effects of his chronic severe pain and objective abnormalities in the record. Dkt. 14 at 8-12. The Court can only overturn the ALJ's credibility determination if it is "patently wrong," so long as she gave specific reasons for her determination that were supported by the record. *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021). The Court gives "considerable deference" to the ALJ's credibility determinations. *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). It will "rarely be disturbed by a reviewing court." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015).

Here, the ALJ gave numerous reasons for discounting Plaintiff's credibility, and those reasons were supported by the record. For example, she pointed to several examinations during which Plaintiff reported extreme pain but exhibited "no pain behavior." R. 20 (citing R. 431, 440, 518, 532-63, 569, 576, 584, 642). The ALJ discussed that while Plaintiff claimed that his left foot was paralyzed, that his leg(s) give out, and that he falls, those issues were not consistently documented in the medical evidence. R. 21. As further support for that, she cited to a physical therapy evaluation where a physical therapist documented that Plaintiff was not at risk for falls, had not had two or more falls in the past year, and had not been injured by a fall in the past year. *Id.* (citing R. 601). The ALJ pointed out that while Plaintiff testified that he was advised against physical therapy, R. 71-72, the record showed that the physical therapist actually

4

*recommended* he come in one to two times weekly, but that Plaintiff would "decide whether he wanted to be treated." R. 21 (citing R. 603). The ALJ also noted that Plaintiff was able to perform a job requiring him to lift 50 pounds after a previous spine surgery and that his alleged onset date coincided with the end of his work activity (which ended due to economic factors, not due to his symptoms). *Id.* (citing 335-39, 598).

Even with all of those reasons, Plaintiff still argues that the ALJ "played doctor." Dkt. 14 at 8-12. Plaintiff takes issue with a multitude of the ALJ's statements, but his argument is largely focused on the ALJ's reliance on Plaintiff's "conservative" treatment and "stable" objective findings. *Id.* (citing R. 19). The Court does not agree with Plaintiff that this constitutes reversible error. While Plaintiff is correct that the ALJ is not allowed to play doctor, she was permitted to (and in fact was supposed to) consider the medical findings and Plaintiff's treatment. *See Deborah M.*, 994 F.3d at 789 ("In making a credibility determination, [a]n ALJ should consider elements such as objective medical evidence of the claimant's impairments…and treatment.") (internal quotation marks and citation omitted). The ALJ articulated throughout her decision how the record supported her conclusions about Plaintiff's treatment and objective findings – for example, she discussed that Plaintiff was treated with medication and periodic procedures, like injections; that he was not recommended surgery by two treating doctors who reviewed his recent MRI; that one of those doctors looked at the recent MRI and "explained there is no significant nerve impingement currently and no obvious reason for tailbone pain"; and that Plaintiff only attended one physical therapy visit. R. 20-21 (citing R. 481-87, 601-03, 674). The ALJ was not playing doctor, but considering Plaintiff's treatment and the medical evidence, as she was supposed to do. *Deborah M.*, 994 F.3d at 790. ("In mentioning this lack of impingement and treatment, the ALJ was not playing doctor. Rather, she was just considering Plaintiff's

5

condition and treatment…and providing additional facts in support of her credibility analysis."); *see also Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (affirming adverse credibility determination based on the claimant's "relatively conservative" treatment consisting of "various pain medications, several injections, and one physical therapy session."). Plaintiff's argument amounts to a request to reweigh the evidence, which the Court is not permitted to do. *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010) ("We cannot, however, substitute our judgment for the ALJ's when considering the weight of the evidence, and [the plaintiff] must do more than point to a different conclusion that the ALJ could have reached to demonstrate that the credibility determination was patently wrong.").

Additionally, even if Plaintiff had pointed to some improper lay inferences, the ALJ cited to the record and gave **numerous** reasons for her credibility determination throughout the decision, some of which the Court noted earlier. *See* R. 20-21. The ALJ relied on much more than Plaintiff's conservative treatment and objective findings to come to her conclusion. Thus, Plaintiff has not shown that remand on this basis would lead to a different result, and for all of these reasons, the Court declines to remand.[3] *See Deborah M.*, 994 F.3d at 790 ("Last, even if the ALJ's consideration of Plaintiff's lack of treatment were wrong, Plaintiff has not shown that it caused any harm. We will only remand a case if we believe that a second proceeding might come to a different result.").

---

[3] The Court did not address every statement that Plaintiff takes issue with regarding the ALJ's credibility determination, because there are many of them and it would not offer more to the analysis. *See* Dkt. 8-12. Even if ***all*** of Plaintiff's examples showed that the ALJ was "playing doctor," the ALJ still gave reasons in addition to Plaintiff's examples that sufficiently supported her credibility determination. For example, Plaintiff makes no argument (and the Court does not see how he could) that it was lay interpretation for the ALJ to consider that Plaintiff made an inconsistent statement about why he did not return to physical therapy or that he was found to be at no risk of falling and reported no falls, despite his claims that he falls. *See* R. 20-21.

### B. The ALJ adequately supported her rejection of Dr. Glaser's opinion.

Plaintiff's second (and very brief) argument is that the ALJ failed to support her rejection of Dr. Glaser's opinion. Dkt. 14 at 12-13. Dr. Glaser, Plaintiff's treating pain specialist, wrote a letter in October of 2022 describing Plaintiff's medical history and prognosis. R. 661-62. The ALJ sufficiently articulated her (in Plaintiff's words) "primary objection" to Dr. Glaser's opinion," however, which was that "he relied largely upon Plaintiff's subjective reports." Dkt. 14 at 12. Plaintiff takes issue with this, because he asserts that "pain is not a symptom that is objectively verifiable." *Id.* While that may be true, the ALJ was still permitted to consider whether Dr. Glaser's opinion represented his own impression of Plaintiff's limitations after reviewing the medical evidence, or whether it only represented what Plaintiff told him. *See, e.g., Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021) ("We cannot know for sure what [the doctor] recorded—his own opinion or [the plaintiff's] account of her condition. The difference matters, as an ALJ does not owe any deference to the portion of a treating physician's opinion based solely on the claimant's subjective complaints.").

Here, a review of the letter shows that the ALJ had good reason to question Dr. Glaser's opinion because it is unclear what is represented – Dr. Glaser's opinion or Plaintiff's. A significant portion of the letter was an explicit recitation of Plaintiff's self-reports. *See* R. 661-62 (stating that Plaintiff "is significantly disabled by his pain. We ask the patient to rate the extent of their disability and performing certain general activities," and then listing out Plaintiff's ratings). Even where Dr. Glaser articulated actual limitations, it was clear that at least some of those limitations were only based on reports by Plaintiff, rather than any assessment by Dr. Glaser, as he included findings that could only come from Plaintiff's reports of his daily life, rather than any exams. *See* R. 661 (discussing Plaintiff's limitations and stating that, "He must

7

change positions constantly to control his pain. He continues to report problems with sexual intimacy. He cannot extend his left leg completely due to pain. He has significant difficulty going up and downstairs. He uses a walker at home. In the recent past, the pain has gotten so severe that he has noted incontinence of urine. He can walk only a short distance without needing to sit down. He spends a significant amount of time in bed to control his pain."). The ALJ was permitted to discredit the opinion once she determined that it represented Plaintiff's complaints, rather than Dr. Glaser's opinion. *See Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013) ("And where a treating physician's opinion is based on the claimant's subjective complaints, the ALJ may discount it.").

### C. The ALJ did not err by failing to account for the effects of Plaintiff's symptoms on his ability to sustain the non-exertional requirements of full-time work.

Plaintiff's last argument is that the ALJ failed to account for the effects of his chronic pain and weakness on his ability to sustain the non-exertional requirements of full-time work. Dkt. 14 at 13-14. More specifically, he asserts that his "pain and numbness would prevent him from satisfying the on-task and attendance requirements of full-time work." *Id.* at 13. However, the ALJ did consider Plaintiff's allegations of pain and other symptoms throughout the decision, and as noted earlier, found them to be inconsistent with and unsupported by the medical record. Plaintiff is correct that the "RFC assessment must incorporate all of the Plaintiff's limitations supported by the medical record," including non-exertional limitations. *Id.* at 13 (citing 20 C.F.R. §404.1545). But here, Plaintiff does not point to anything in the medical record that would support non-exertional limitations beyond Plaintiff's own testimony, though he attempts to do so by pointing to Dr. Glaser's opinion. *Id.* at 14. Plaintiff asserts that Dr. Glaser "ascertained" that "Plaintiff would be unable to sustain work-related mental functioning," stating that, "[Dr. Glaser] noted that Plaintiff endorses significant deficits in performing basic home

8

activities, engaging in hobbies or cognitive activities, performing self-care, getting restful sleep, socializing and paying attention, concentrating, remembering things, or solving problems." *Id.* (citing R. 661-62). However, a review of Dr. Glaser's letter shows that Plaintiff misinterprets the letter – Plaintiff seems to be referring to a section of the letter where Dr. Glaser listed out Plaintiff's own ratings of his disability.[4] *See* R. 661-62. Nowhere in his letter does Dr. Glaser specifically opine as to work-related limitations, nor does he opine that Plaintiff could not satisfy the on-task and attendance requirements for full-time work. And even if Dr. Glaser had opined to non-exertional limitations, as discussed above, the ALJ properly was permitted to and did reject his opinion.

As Plaintiff points to no medical evidence that supports the non-exertional limitations he now says should have been included in his RFC, and as no doctor opined to those non-exertional limitations, his argument fails. *See Spring W. v. Saul*, No. 20 C 1864, 2021 WL 2529615, at *6, n.5 (N.D. Ill. June 21, 2021) ("[N]o doctor opined that [the plaintiff] would require an off-task time limitation, so [the plaintiff's] argument that the ALJ should have included an off-task time limitation, lacks merit."); *see also Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024) (affirming the ALJ's decision and stating "[n]owhere does [the plaintiff] identify what evidence the ALJ overlooked or discounted…").

---

[4] Plaintiff states, "Specifically, [the ALJ] noted that Plaintiff endorses significant deficits in performing basic home activities, engaging in hobbies or cognitive activities, performing self-care, getting restful sleep, socializing, and paying attention, concentrating, remembering things, or solving problems." Dkt. 14 at 14. However, the only time Dr. Glaser mentioned those categories of deficits (e.g., "home activities," "hobbies") was when he listed out Plaintiff's own ratings of those categories. *See* R. 661-62.

## IV. CONCLUSION

Ultimately, the ALJ supported her decision with substantial evidence and adequately explained how the evidence supported her conclusions, and that is all that was required of her. *Warnell*, 97 F.4th at 1052-54. Plaintiff's Memorandum in Support of Reversing or Remanding Commissioner's Decision (dkt. 14) is DENIED and the Commissioner's Motion for Summary Judgment (dkt. 19) is GRANTED. The Commissioner's decision is affirmed.

**SO ORDERED.**

Date: September 30, 2024

_____
BETH W. JANTZ
United States Magistrate Judge